# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

| | |
|---|---|
| SHARON D. KILGORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CASE NO.  6:13-cv-00899-JEO |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Sharon D . Kilgore brings this action, through counsel, pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for a period of disability and disability insurance benefits ("DIB")  and for supplemental security income benefits ("SSI").  (Doc.[1] 1). The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference dated January 14, 2013.  The parties have consented to the jurisdiction of this court for disposition of the matter.  *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a).  Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

### I.  PROCEDURAL HISTORY

Plaintiff protectively filed applications for a period of disability and DIB and for SSI on

---

[1] References herein to "Doc(s).  __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

October 5, 2010, alleging disability beginning October 1, 2009. (R. 115-229, 151).[2] She also filed amendments thereto. (*Id*. at 136-38). Her claims were denied initially. (*Id*. at 74-78). Thereafter, she requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 8, 2012. (R. 85). Plaintiff was represented by counsel at the hearing. (R. 84). The ALJ denied Plaintiff's applications. (R. at 8-26).

Plaintiff requested the Appeals Council review the ALJ's decision. The Appeals Council declined Plaintiff's request for review. (R. 1-3). Therefore, the ALJ's decision represents the final decision of the Commissioner. (*Id*.) Plaintiff thereafter timely filed this action for judicial review under 42 U.S.C. § 405(g), asserting that the findings of the Commissioner are not based upon substantial evidence and that improper legal standards were applied. (Doc. 1).

## II. STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, this court's role is a narrow one: "Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v.*

---

[2]Citations to "R. ___" are to the page of the administrative record, which is encompassed within Docs. 6-1 to 6-8.

*Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)) (internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence" is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted). As just noted, conclusions of law made by the Commissioner are reviewed de novo. *Cornelius,* 936 F.2d at 1145. "No ... presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III.  DISCUSSION

**A.    The Facts**

    **1.    Background**

At the time of the ALJ's decision in this case, Plaintiff was forty-four years old with a marginal education having left school during the seventh grade.[3]  (R. 20, 34). She has past relevant work as a fast food worker and manager. (*Id*. at 22). Plaintiff initially filed her application for disability benefits listing her conditions as "back problems, hip problems, high blood pressure, thyroid problems, and depression." (R. 155). Plaintiff's primary treating physician was Dr. Gary Fowler. (R. 216-264, 302-326). Dr. Fowler's records of Plaintiff's visits

---

[3]Plaintiff originally reported her education level on the disability questionnaire as having completed the eleventh grade. (R. 156). During the hearing before the ALJ, Plaintiff clarified that she had left school during seventh grade to get married and later participated in GED preparatory classes, although she did not pass the GED test. (R. 48). ALJ determined Plaintiff had a marginal education level. (R. 20). A marginal education level is defined as having "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled" jobs, and is generally consistent with a 6th grade or less schooling level. 20 C.F.R. § 404.1564(b)(2).

to his office, beginning on November 11, 2008, and concluding January 4, 2012, constitute the majority of the medical evidence produced by Plaintiff. (*Id.*) Plaintiff had also been seen on one occasion by Dr. C. Todd Fetter, a chiropractor, on December 10, 2009. (R. 202-215). In addition, Plaintiff received a consultative examination from Dr. Marlin D. Gill on February 7, 2011. (R. 265-267). Plaintiff's records were reviewed for a physical capacity assessment by Dr. Robert H. Heilpern on February 9, 2011, and for a mental capacity assessment by Dr. Robert Estock on February 9, 2011. (R. 286-293, 272-285).

      Dr. Fowler also submitted an opinion letter dated February 9, 2012, in which he stated that he did not believe Plaintiff was capable of returning to work. (R. 301). Dr. Fowler's records reflect that Plaintiff began complaining of back and leg pain during an examination on October 12, 2009. (R. 233). In December of that year, Dr. Fowler began prescribing Lortab to alleviate pain and recommended that Plaintiff see an orthopedic specialist. (R. 228). In August 2010 Plaintiff requested a hard back brace from Dr. Fowler, which he subsequently prescribed. (R. 220). In October, she again returned to see Dr. Fowler but stated that the pain was less with use of medication. (R. 218). When Plaintiff saw Dr. Fowler in May 2011 she reported her pain as being 2/3 out of 10, though the doctor noted her range of motion was still limited. (R. 319). However, when Plaintiff returned in September 2011 and again in January 2012, she stated her pain was at level 9 out of 10. (R. 311). During this same period of time, Dr. Fowler was also treating Plaintiff for her high-blood pressure and thyroid problems with medication. Additionally, he began prescribing Plaintiff Zoloft for depression in February 2011. (R. 325).

      Dr. Fetter's records reflect similar observations to Dr. Fowler, noting pain in the back, hips, and legs with some limited range of motion. (R. 202-215). Dr. Gill determined that the

Plaintiff was experiencing lower back pain due in part to a history of degenerative disc disease arthrosis. He noted a wedge fracture at L5. (R. 267). However, he also noted that Plaintiff was capable of walking with a normal gait; was capable of squatting and raising to standing while holding a table; had a fairly wide range of motion; and was able to bend her hip and knee joints. (*Id*.) Dr. Estock reported that Plaintiff appeared to have a mild case of adjustment disorder with depression, which was not severe. (R. 284). Dr. Heilpern reported that Plaintiff's claims of pain were generally consistent with the presence of degenerative disc disease and wedge fracture. (R. 291). However, Dr. Heilpern also opined that Plaintiff should still be capable of standing for up to six hours out of an eight hour day; sitting for six hours out of an eight hour day; lifting up to ten pounds frequently and 20 pounds occasionally; and should generally be capable of performing work with some limitations. (R. 286-293).

### 2.     ALJ Findings

The ALJ found that Plaintiff has severe physical impairments of osteoarthritis of the pelvis and lumbar spine at L2-L5 and a history of a wedge fracture at L5.[4] (R. 13). However, she also found that Plaintiff had no impairment or combination of impairments that met or medically equaled any listing. (*Id*. at 16). She further found that Plaintiff had the residual functional capacity ("RFC") to perform light work, except that she could not climb ladders, scaffolding, or ropes; she should avoid concentrated exposure to extreme cold and areas of vibration; she should avoid all exposure to industrial hazards, including working at unprotected heights or in close proximity to moving dangerous machinery; and she should not be required to perform push/pull

---

[4]The ALJ also determined that Plaintiff's hypertension, hyperthyroidism, and depression were non-severe impairments that had not resulted in any significant limitation. (R. 14).

movements or operate foot controls with her lower extremities. (*Id*. at 16-17). The ALJ determined that Plaintiff could return to her past relevant work as a fast food worker and/or manager and that she could perform other jobs in the national economy. (*Id*. at 22-23). Her final conclusion was that Plaintiff was not disabled. (*Id*. at 23).

**B.     Analysis**

Plaintiff argues the ALJ erred in that her RFC findings are not based on substantial evidence. (Doc. 12 at 10). Specifically, she states that the ALJ erred (1) in not giving greater weight and consideration to the opinion of Dr. Fowler, Plaintiff's treating physician, (2) in not including limitations due to Plaintiff's use of a back brace in the hypothetical questions posed to the Vocational Expert and (3) in failing to order an MRI examination. (*Id*. at 10-14).

As noted above, the ALJ found that Plaintiff was capable of performing "light work" with certain limitations. (R. 22). Plaintiff's over-arching challenge is that this conclusion is wrong because the ALJ's RFC findings are not based on adequate evidence or a fair and fully developed record. (Doc. 12 at 10-14). The Commissioner responds that the evidence is sufficient and there was no need for an MRI in assessing Plaintiff's RFC. (Doc. 13 at 22-23).

An RFC is an "individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis ... [which] means 8 hours a day for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184 (July 2, 1996). It "involves determining the claimant's ability to do work in spite of his impairments" in consideration of all relevant evidence. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). It is the responsibility of the Commissioner to determine a claimant's RFC. *See Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010)

(stating that "the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors"). As recently noted by Chief Judge Karon O. Bowdre:

> Because the hearing before an ALJ is not an adversarial proceeding, the ALJ has a basic obligation to develop a full and fair record before determining a claimant's Residual Functional Capacity. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Developing a full and fair record, however, does not require an ALJ to secure a medical source opinion regarding the claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c); *see also Langley v. Astrue*, 777 F. Supp. 2d 1250, 1261 (N.D. Ala. 2011) ("The failure to include [an RFC assessment from a medical source] at the State agency level does not render the ALJ's RFC assessment invalid."); *Green v. Soc. Sec. Admin*, 223 F. App'x 915, 923–24 (11th Cir. 2007). Because the overall RFC determination is "based on all the relevant evidence in [the claimant's] case record," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (emphasis added), the ALJ can fulfill his responsibility to develop the record even without a medical source opinion. Thus, as long as the ALJ's determination is based on substantial evidence, the absence of an RFC assessment by a medical source will not render the ALJ's RFC determination invalid. *Green v. Soc. Sec. Admin*., 223 F. App'x 915, 924 (11th Cir. 2007).
>
> While the failure of an ALJ to rely upon an RFC assessment from a medical source is not enough to invalidate the ALJ's overall RFC determination, the ALJ's duty to fully develop the record may require the ALJ to order a consultative examination if "necessary to make an informed decision." *Smith v. Commissioner*, 501 F. App'x. 875, 878 (11th Cir. 2012). Federal regulations provide that such an evaluation is appropriate "to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination." 20 C.F.R. §§ 404.1519a(b), 416.919a(b). Ultimately, however, the general rule remains: if substantial evidence supports the ALJ's decision, the ALJ does not err in denying a request for a consultative examination. *Holladay v. Bowen*, 848 F.2d 1206, 1209-10 (11th Cir. 1988); *see also Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984).

*Thompson v. Colvin*, 2014 WL 1278085, *2-3 (N.D. Ala. 2014); *see also* 20 C.F.R. § 416.946(c) (stating, "the administrative law judge or the administrative appeals judge at the Appeals Council ... is responsible for assessing your residual functional capacity").

It is also well-settled that Plaintiff bears the burden of proving that he is disabled. *See* 20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)."); 20 C.F.R. § 416.912(c) ("Your responsibility. You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled. You must provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim."); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (stating that "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim").

### 1. Consideration and Weight Given to the Opinion of Plaintiff's Treating Family Doctor

Plaintiff first argues that the ALJ did not properly consider all of the relevant evidence in assessing Plaintiff's RFC. (Doc. 12 at 10). Specifically, Plaintiff contends that the ALJ did not give proper weight and consideration to the opinion of Dr. Fowler, Plaintiff's primary treating physician. (*Id.* at 11). This court finds that there is substantial evidence to support the ALJ's RFC findings regarding Plaintiff and the weight given to the opinion of Dr. Fowler.

"In assessing the medical evidence, the ALJ was required to state with particularity the weight given to the different medical opinions[5] and the reasons therefor." *Sharfarz v. Bowen*,

---

[5] The ALJ is provided guidelines to employ when evaluating medical evidence by the Social Security regulations. *See* 20 C.F.R. §§ 404.1527, 416.927. Medical opinions are statements from physicians or other medical sources that reflect judgments about the nature and severity of impairments, including symptoms, diagnosis, what the applicant can still do despite her impairments, and any physical or mental restrictions. *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Opinions on some issues, however, are not "medical opinions" because they are reserved for the Commissioner as "administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d).

825 F.2d 278, 279 (11th Cir. 1987); *see Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  The opinion of a treating physician, "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (quoting *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997)).  Good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Id* at 1241.  "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.; See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1159-60 (11th Cir. 2004).

The ALJ scrupulously examined the opinion given by Dr. Fowler in light of the record evidence and clearly articulated her reasons for giving the opinion little weight.  (R. 21-22.)  Primarily, the ALJ decided that Dr. Fowler's opinion, as given in his opinion statement, was "inconsistent with his own treatment notes and [Plaintiff's] documented response to conservative treatment efforts the findings of the consultative examination, her abilities to return to work and operate a business, the claimant's reported activities of daily living ... and the other substantive evidence of record."  (R. 22).  The progress notes that were prepared by Dr. Fowler contemporaneously with Plaintiff's visits routinely describe her as being in no acute distress with substantial functionality and mobility.[6]  (R. 21-22, 216-64, 305-26).  As such they are inconsistent with Dr. Fowler's later characterization of Plaintiff as being in severe pain with

---

[6]The court does note that on September 22, 2011, she did report "[b]ack pain on daily averages is 9/10." (R. 311).

severely limited range of motion. (R. 301).

Additionally, Dr. Fowler's opinion is inconsistent with the findings of Dr. Marlin D. Gill. (R. 22, 266-67). Upon examination, Dr. Gill found Plaintiff had some tenderness over the lumbar spine and sacral area, but had a normal gait, could squat all the way down and arise while holding a table for balance, could heel/toe walk without reported difficulty, and use her hands and arms normally with full range of motion and no limitations. (R. 18, 267). Dr. Gill further found that Plaintiff's back looked normal, her legs were symmetrical with good muscle tone, her right hip was non-tender, and she had a good range of motion, strength, and flexibility in her hips. (R. 18-19, 267). The ALJ therefore reasonably concluded that Dr. Fowler's conclusory opinion that Plaintiff was incapable of any work was inconsistent with Dr. Gill's findings on examination.

The ALJ also discounted Dr. Fowler's opinion because it was inconsistent with Plaintiff's daily activities as reported in a disability questionnaire, in which Plaintiff described a range of activities she performed, such as household chores, cooking, shopping, and taking care of children. (R. 22, 170-73). The inconsistencies between Dr. Fowler's opinion and his own treatment notes, Plaintiff's self-reported daily activities, and Dr. Gill's findings on examination, provide substantial evidence to support the ALJ's conclusion that Dr. Fowler's opinion was entitled to little weight.

Plaintiff further argues that the ALJ violated the regulations by requiring Dr. Fowler to base his opinion on objective findings alone. (Doc. 12 at 11); *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (stating that a treating source "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone"). While it is correct


that the ALJ must consider the treating physician's unique perspective and opinion, that opinion is to be weighed in light of the overall record, and can be rejected with explicit and adequate reasoning. *See Phillips*, 357 F.3d at 1240-41. The ALJ has done just that, weighing and rejecting the opinion of Dr. Fowler in light of the overall record and offering explicit and adequate reasoning for doing so. Further, the record does not reflect that the ALJ ever stated or implied that Dr. Fowler's opinion could not be credited because it was not based on medical findings alone. (*See generally* R. 17-22). Nor does Plaintiff cite to any evidence in the record that would contradict this conclusion. In sum, the ALJ's assessment is supported by the record, and the ALJ applied the proper legal standards in assessing the weight of the opinion submitted by Dr. Fowler.

    **2.**    **Requirement of Including Limitations Due to Plaintiff's Use of a Back Brace in the Hypothetical Questions Posed to the Vocational Expert**

Plaintiff next contends that the ALJ "was required to include a hard back brace in all of her hypothetical questions to the VE." (Doc. 12 at 13). Further, Plaintiff argues that the ALJ did not properly credit Dr. Fowler's prescription of a rigid back brace in concluding the brace was not "medically necessary." (*Id.* at 12). The hypothetical questions posed to a VE must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence. *McSwain v. Bowen,* 814 F.2d 617, 619-20 (11th Cir. 1987) (*per curiam* ); *Pendley v. Heckler,* 767 F.2d 1561, 1562–63 (11th Cir. 1985) (*per curiam* ). However, a hypothetical question need not incorporate alleged impairments that the ALJ has properly discredited or found to be unsupported by the medical evidence. *Crawford,* 363 F.3d at 1161.

Contrary to Plaintiff's assertions, the ALJ listed a number of adequate reasons for discounting Plaintiff's use of a back brace. (R. 19-20). The record reflects that the back brace was prescribed to Plaintiff as a discretionary measure, not because it was medically required. (R. 19, 220). Plaintiff requested the back brace to see if it would help with the discomfort she was experiencing. (*Id.*) Because there was no objective evidence that the back brace was medically required the ALJ was not obligated to include the back brace in the hypotheticals posed to the VE. *See Broaster v. Colvin*, No. CV113-032, 2014 WL 2199846, at *8 (S.D. Ga. May 27, 2014); *Johnson v. Astrue*, No. 5:11-cv-1666-KOB, 2012 WL 4339507, at *14 (N.D. Ala. Sept. 18, 2012) (finding ALJ properly rejected claimant's reliance on a cane for lack of medical documentation showing need and concluding ALJ was thus not required to pose a hypothetical that assumed restrictions due to using a cane).

Plaintiff relies on *Mire v. Comm'r of Soc. Sec.,* No. 2:06-cv-1056, 2008 WL 482548 (S.D. Ohio Feb. 20, 2008), to support her assertion that the ALJ should have included the back brace in the hypotheticals posed to the VE. (Doc. 12 at 12). However, that case is distinguishable from the one at hand. In *Mire*, the claimant's treating physicians considered the use of a cane to be medically necessary, while the non-examining state agency physician determined it was non-obligatory. *Id.* at *4. On review before the district court the parties agreed that if the cane was medically necessary it would have a significant impact on the claimant's ability to perform light work. *Id.* As such the case was remanded for a determination of whether use of a cane was medically necessary, and in turn, the effect the use of a cane would have on the claimant's residual functional capacity. *Id.*

Unlike the treating physician in *Mire*, Dr. Fowler did not state that Plaintiff's back brace

12

was medically required, nor did the ALJ give greater weight to the opinion of a non-treating physician on the issue. (R. 19, 220). Plaintiff's assertions that Dr. Fowler prescribed the back brace with instructions to wear it all day are simply not supported by the record. (*Id.*) Plaintiff cites to no other evidence in the record that would contravene the conclusion that the back brace was not medically required. As such, the ALJ's assessment is supported by the record, and the ALJ was not required to include the back brace in the hypotheticals posed to the VE.

### 3. Ordering an MRI to Develop a Full and Fair Record

Plaintiff next contends that the ALJ erred in failing to order an MRI on her behalf as an element of developing a full and fair record. (Doc. 12 at 13-14). The court disagrees. As has been already noted, the ALJ has a duty to develop the record fully and fairly. *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). In determining whether it is necessary to remand a case for development of the record, the Court considers "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Salazar v. Comm'r of Soc. Sec.*, 372 F. App'x 64, 67 (11th Cir. 2010) (quoting *Brown v. Shalala,* 44 F.3d 931, 935 (11th Cir. 1995) (*per curiam*) (citation and quotation omitted)). Under the social security regulations, the ALJ may order additional consultative examinations if the medical evidence submitted by the claimant does not provide enough information about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917.

Nevertheless, the ALJ is not required to order additional examinations if the evidence in the record is sufficient to allow him to make an informed decision. *Salazar*, 372 F. App'x at 67 (citing *Ingram v. Comm'r of Soc. Sec. Admin.,* 496 F.3d 1253, 1260 (11th Cir. 2007) (citation omitted)); *see Holladay v. Bowen*, 848 F. 2d 1206, 1210 (11th Cir. 1988); *Bailey v. Astrue*, 739

F. Supp. 2d 1365, 1377-78 (N.D. Ga. 2010) (finding there was sufficient evidence to support a disability determination without an MRI where record was unambiguous on presence of pain, and there was no indication that the doctors who provided opinions could not do so without an MRI); *Dawson v. Colvin*, No. 6:13-CV-741-AKK, 2014 WL 721945, at *3 (N.D. Ala. Feb. 24, 2014) (holding where record was adequately developed to make a disability determination, and no doctor recommended a new MRI, ALJ was not required to order an updated MRI). Additionally, "[w]hen alleging disability, the claimant carries the burden of proving that he is disabled, and he alone is responsible for producing evidence to support his claim." *Bentley v. Astrue*, 2012 WL 4479273, *2 (N.D. Ala. September 25, 2012) (citing 20 C.F.R. §§ 404.1512(a), 416.912(a); *Ellison*, 355 F.3d 1272, 1275 (11th Cir. 2003)).

To the extent Plaintiff argues that further development of the record was necessary in the form of an MRI "because an MRI is necessary to the ALJ's informed decision," the court again disagrees.[7] (Doc. 12 at 13). Plaintiff states that "[t]he ALJ's decision seems to contend that without those MRI test result [*sic*] she cannot prove her case." (*Id.*) However, the ALJ's decision examined Plaintiff's failure to pursue acquiring an MRI as a factor weighed in determining Plaintiff's credibility. (R. 19). The decision did not imply that acquiring an MRI would have been determinative, but stated that Plaintiff's failure to have the procedure done

---

[7]Defendant urges the court to consider the issue of developing the record as being separate from the issue of whether the ALJ was required to order an MRI, and in turn states that the former issue should be considered abandoned for the Plaintiff's failure to develop an argument. (Doc. 13 at 22). However, Plaintiff appears to contend that the ALJ was obligated to order an MRI as an element of developing the record, as opposed to being for any other discrete reason. (Doc. 12 at 13-14). There is therefore no need to address these two points separately, as either path of inquiry leads to the same conclusion. As a result there is also no need to directly address the abandonment argument made by Defendant. While every point of Plaintiff's argument may not be compellingly developed, there is more than a mere "passing reference" to the issue of whether an MRI was required to develop a full and fair record. (Doc. 13 at 23; Doc. 12 at 13-14).

"reflects negatively on the claimant's allegations of disabling symptoms and suggests the conservative care she receives is beneficial." (*Id.*)

Nothing before this court suggests that the ALJ needed an MRI to assess Plaintiff's RFC. To the contrary, the record is replete with evidence supporting her determination. A consultative examination had already been conducted by Dr. Marlin Gill, and at that time he did not recommend an MRI. (R. 266-67). Nor was an MRI recommended by Dr. Robert Heilpern, the state agency medical consultant who reviewed the record and opined concerning Plaintiff's limitations. (R. 286-93). Moreover, Plaintiff has failed to show there is insufficient evidence in the record to support an overall disability determination.

Further, though the MRI exam is costly, Plaintiff has offered no argument as to why the cost of the procedure should have been a factor the ALJ was required to consider in deciding to order a consultative examination. (Doc. 12 at 13). Nor does Plaintiff offer argument that her difficulty in paying for the procedure obligated the ALJ to order it. (*Id.*) In the ALJ's decision the cost of the procedure was considered only as another factor to be weighed in determining Plaintiff's credibility. (R. 19). The ALJ considered that Plaintiff had not obtained an MRI allegedly due to cost but had not sought out indigent or government-subsidized healthcare, was able to maintain an expensive tobacco habit, and was receiving income from unemployment benefits. (R. 18-19). Taken as a whole, the ALJ determined that Plaintiff's failure to pursue additional treatments weighed in favor of finding that her treatment by her primary physician, Dr. Fowler, was adequate, which was not consistent with Plaintiff's allegations of disabling symptoms. (R. 19).

As such, the ALJ did not err in failing to order an MRI, nor was an MRI necessary to the

informed decision of the ALJ. This claim is without merit because the ALJ's assessment is supported by the record. Plaintiff has pointed to nothing in the medical records disputing the ALJ's conclusion or warranting further inquiry. Finally, Plaintiff has shown no prejudice. While an MRI might have further enlightened the situation, it was not required.

In sum, the undersigned finds that the record is sufficient to support the ALJ's decision. She was not required under the circumstances to seek any additional consultative evidence. Plaintiff simply failed to carry her burden of proof in this matter.

## IV. CONCLUSION

For the reasons set forth above, the undersigned finds that the decision of the Commissioner is due to be **AFFIRMED**. An appropriate order will be entered separately.

**DONE**, this the 19th day of June, 2014.

_John E. Ott_
**JOHN E. OTT**
Chief United States Magistrate Judge